UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FULL SPECTRUM IH, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DCM, INC., et al.,<br><br>　　　　Defendants. | Case No.: 1:20-cv-0673- DAD JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO SET ASIDE THE ENTRY OF DEFAULT<br><br>(Doc. 16) |

Full Spectrum IH, LLC asserts it entered into a contract with DCM, which provided DCM would purchase a total of 3,500 lbs of machine-trimmed industrial hemp. Plaintiff asserts Defendants breached the agreement, and seeks to hold Defendants liable for the breach and fraudulent conduct. (*See* Doc. 1) Plaintiff seeks an award of default judgment (Doc. 15), while Defendants seek to set aside the entry of default (Doc. 16).

For the reasons set forth below, Defendants' motion to set aside the entry of default is **GRANTED**, and the motions for the entry of default judgment are terminated as **MOOT**.

**I.    Background**

Plaintiff alleges that Michael Lagnese, Plaintiff's principal, "entered into negotiations with Aliraza [Jivan], on behalf of Defendants, for the purchase and sale of industrial hemp" in October 2019. (Doc. 1 at 4, ¶ 15) According to Plaintiff, "During those negotiations, Aliraza verbally represented and promised Lagnese that if Plaintiff could manufacture, sell, and supply 3,500 lbs. of machine-trimmed

industrial hemp of a particular strain and quality requested by DCM (the "Product") over a two month period, DCM would purchase 500 lbs. of the Product per week from Plaintiff in seven (7) weekly installments of $80,000.00 (a fixed rate of $160.00 per lb.) for a total sum of $560,000.00." (*Id.*, ¶ 16) Thus, "Plaintiff entered into an Industrial Hemp Purchase Agreement dated November 7, 2019 with DCM for the purchase and sale of the Product for the Purchase Price." (*Id.* at 5, ¶ 21)  Plaintiff asserts the Agreement was executed by Aliraza's wife, Alfia, who "is the President of DCM and its purchasing agent, Liberty." (*Id.* at 5, ¶¶ 21-22; *see also id.* at 19)  Pursuant to the terms of the Agreement, "DCM would purchase from Plaintiff 500 lbs. of the Product per week in seven (7) weekly installments of $80,000.00 per week beginning on November 8, 2019 through December 20, 2019." (*Id.*, ¶ 23)

Plaintiff alleges that Aliraza's promises and representations regarding the seven installments "were material to Plaintiff's decision to enter into an agreement with DCM to manufacture, sell, and supply the Product as it would be required to immediately dedicate substantial time and resources away from its other pending business to cultivate, harvest, and deliver the Product on-time and compliance with DCM's specifications." (Doc. 1 at 4, ¶ 18)  Plaintiff asserts these representations were false. (*Id.*, ¶ 16)  Plaintiff contends "Aliraza knew that: (i) DCM did not intend to timely perform its obligations under such agreement; and (ii) DCM was insolvent, undercapitalized, and/or lacked the financial ability to timely perform its obligations under such agreement." (*Id.* at 4-5, ¶ 19)

According to Plaintiff, "[b]oth parties… understood that, like most plant and animal matter, industrial hemp is perishable and the Product would gradually lose value over time as it decays and loses its important inherent qualities." (Doc. 1 at 4, ¶ 17)  In addition, Plaintiff asserts, "the parties agreed that time was of the utmost essence with their respective obligations." (*Id.*)

Plaintiff reports that on "November 8, 2019, by and through its purchasing agent, Liberty, paid Plaintiff the initial installment of $80,000.00 and Plaintiff delivered the first 500 lbs. of Product to DCM." (Doc. 1 at 5, ¶ 25)  However, Plaintiff asserts "DCM defaulted on its obligations under the Agreement and failed to pay any of the remaining six (6) weekly installments in full." (*Id.*)  Plaintiff alleges that on January 23, 2020, "DCM, by and through Liberty, purchased 250 lbs. of Product from Plaintiff for $40,000.00 -- half the amount of the second installment that was due on November 15, 2019." (*Id.*, ¶ 26)

Plaintiff alleges, "On February 18, 2020, when it became clear that Defendants would not perform their obligations under the Agreement despite months of repeated promises and assurances from Aliraza, Plaintiff provided Defendants with written notice of default (the "Notice") pursuant to the Agreement." (Doc. 1 at 6, ¶ 27)  Plaintiff asserts that per the terms of the Agreement, "Defendants had fifteen (15) calendar days from the date of the Notice to fulfill its obligations and cure its default." (*Id.*) However, "Defendants disregarded Plaintiff's Notice and made no attempt to cure its default." (*Id.*)

According to Plaintiff, "March 31, 2020, Aliraza sent a text message to Lagnese in which he attempted to blame Governor Gavin Newsom's 'shelter in place' order (announced on March 19, 2020) to prevent the spread of COVID-19 as the basis for Defendants' breach." (Doc. 1 at 6, ¶ 28)  Plaintiff asserts that as of the time of filing the complaint, DCM had "purchased a total of only 750 lbs. of Product from Plaintiff." (*Id.* at 5, ¶ 26)  Thus, "Defendants owe Plaintiff a remaining purchase obligation of 2,750 lbs. of Product for the sum of $440,000.00." (*Id.* at 6, ¶ 29)

On May 12, 2020, Plaintiff initiated this action by filing a complaint against DCM, Liberty Novelty, Aliraza Jivan, and Alfia Jivan. (Doc. 1)  Plaintiff identified the following causes of action against Defendants: (1) promissory fraud, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, and (4) violation of California's unfair competition law. (*See generally* Doc. 1) Plaintiff seeks "to recover compensatory damages, punitive damages, costs, and attorneys' fees." (*Id.* at 2, ¶ 1)

After Defendants failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure, Plaintiff requested the entry of default. (Docs. 8-10, 12) The Clerk of the Court entered default against Alfia Jivan, DCM, and Liberty Novelty on June 17, 2020 (Doc. 11) against Aliraza Jivan on July 21, 2020. (Doc. 13)  Because default had been entered against all defendants, the Court ordered Plaintiff to "file a motion[] for default judgment" no later than August 31, 2020. (Doc. 14)

Plaintiff filed a motion for default judgment on August 3, 2020. (Doc. 15)  Defendants moved to set aside the entry of default on August 13, 2020 (Doc. 16) and opposed default judgment on August 19, 2020 (Doc. 18).  Plaintiff filed an opposition to the motion to set aside default on August 27, 2020 (Doc. 21), to which Defendants filed a reply on September 3, 2020 (Doc. 26).

## II. Legal Standards

The Federal Rules of Civil Procedure govern the entry of default and default judgment. Once the clerk enters default, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In evaluating whether good cause exists, the court may consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc*., 375 F.3d 922, 925-26 (9th Cir. 2004)); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The standard for good cause "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

When the moving party seeks relief from default "and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt*., 783 F.2d 941, 945-46 (9th Cir. 1986), quoting *Schwab v. Bullocks Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). A district court's discretion to set aside default pursuant to Rule 55(c) is "'especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment.'" *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (quoting *Mendoza*, 783 F.2d at 945 (9th Cir. 1986)). "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

## III. Discussion and Analysis

### A. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (quoting *Alan Newman Prods. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) [emphasis in original]). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial

decisionmaking, or otherwise manipulate the legal process." *United States v. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (citation omitted); *see also TCI Group*, 244 F.3d at 698 (actions may be culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond").

The Ninth Circuit determined that "a signed return of service constitutes prima facie evidence of valid service." *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007). Plaintiff filed signed Returns of Service that indicated Alfia Jivan was served with the summons and complaint on May 20, 2020. (Docs. 4, 5, 6)  The Returns of Service indicate she was served personally in her own capacity (Doc. 5 at 2) and as the registered agent for Liberty Novelty (Doc. 4 at 2). The process server also indicated the documents for AliRaza Jivan were left with "Alfia Jivan, co-defendant/co-resident" at that time. (Doc. 6 at 2)  On May 22, 2020, Plaintiff's process server indicated copies of the summons and complaint for DCM Inc. "were left [with] Shannon McCormick, Administrative Assistant at Registered Agent Corporate Service Center, Inc." in Reno, Nevada. (Doc. 7 at 2)  Finally, Plaintiff reported that "a copy of the summons and complaint was mailed by first-class mail… on June 16, 2020" to AliRaza Jivan. (Doc. 12 at 4)

Defendants assert Plaintiff did not serve the complaint upon in the manners identified in the Returns of Service. (Doc. 17 at 10-11, 14-17)  Defendants contend, "Alfia Jivan was not served individually or on behalf of Liberty or AliRaza Jivan," and instead the documents were left with the defendants' 15-year-old son, "AJ". (*Id.* at 10, 14)  In support of this assertion, Defendants have filed declarations from AJ; Alfia Jivan; and Alejandra Duran, a Liberty Novelty employee. (*See* Docs. 16-3, 16-4, 16-5)  Alfia Jivan asserts at the time of the reported service, she "was at Liberty's Maryland office," and she has "at least two[] eye witnesses who saw [her] at Liberty's offices at 6:28 p.m." (Doc. 16-3 at 3, Alfia Decl. ¶ 10)  Ms. Duran reports that on May 20, 2020, she left the office at 6:37 p.m. and "said goodnight to Mrs. Jivian upon leaving for the night." (Doc. 16-4 at 2, ¶ 4)  Defendants contend AJ accepted the documents "and placed them in [a] stack of documents in AliRaza Jivan's home office." (Doc. 17 at 11, citing AJ Decl. ¶¶ 2-3)  Thus, Alfia Jivan asserts she has "never been served with the summons and complaint in this case at any time." (Doc. 16-3 at 3, ¶ 11)

According to Defendants, "the first time Defendants became aware of the pendency of this

lawsuit was when AliRaza Jivan was filtering through his spam mailbox on Sunday, July 26, 2020, and saw this Court's CM/ECF message informing him of the Clerk's July 21, 2020 Entry of Default (ECF No. 13)." (Doc. 17 at 12, citing Alfia Jivan Decl. ¶ 14)  Plaintiff's counsel had added Mr. Jivan's email to the Court's electronic filing system at the time the Complaint was filed "to ensure that Mr. Jivan would receive electronic notifications relating to this action from the Court." (Doc. 21 at 6, citing Lau Decl. ¶ 4)  Defendants assert Mr. Lau, Plaintiff's counsel, "had not notified AliRaza Jivan that he should expect to receive legal notices from the court's ECM service or that Plaintiff had instigated this lawsuit," and all emails were directed to his spam mailbox. (Doc. 17 at 11-12)

The Ninth Circuit determined that "a signed return of service constitutes prima facie evidence of valid service." *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).  Further, it appears Defendants had at least constructive notice of the filing of the complaint, as Alfia Jivan reports she had previously received "a copy of Plaintiff's proposed complaint," and she assumed—wrongfully—that the documents given to her son were additional demand letters with a proposed complaint, rather than a filed complaint. (*See* Doc. 16-3 at 4, ¶ 13)

The parties clearly disagree whether service was properly affected, and Defendants have indicated an intent "to move to dismiss for failure to effect service…" (*See* Doc. 17 at 17) The Court declines at this juncture to make a determination as to whether service on each of the defendants was proper. *See Ervin v. Farmers Ins. Exc.*, 2005 WL 2671412 at *1 (E.D. Cal. Oct. 19, 2005) (declining to determine whether the defendants were properly served with the process where "the parties have submitted conflicting declarations in this regard").  The evidence before the Court strongly suggests Defendants did not intentionally fail to answer, as required for a finding of culpability.  As noted, Alfia Jivan reports she did not appreciate the complaint that she received had been filed by Plaintiffs, rather than another copy of the complaint the Plaintiff intend to file. (*See* Doc. 16-3 at 4, ¶ 13)  Further, AliRaza Jivan maintains he was not "aware of the lawsuit prior to July 26, 2020" when he checked his email, and immediately retained counsel on July 29, 2020. (Doc. 16-2 at 4, ¶¶ 12-13)

The same date has he was retained, Defendants counsel, Reza Gharakhani, contacted Plaintiff's counsel, Mr. Lau, "and requested that Plaintiff stipulate to set aside Defendants' defaults." (Doc. 16-1 at 2-3, ¶ 7)  When Mr. Gharakhani did not receive a response, he called and left a message for Mr. Lau

6

on August 3, 2020. (*Id.* at 3, ¶ 8) Mr. Gharakhani did not receive a response indicating Plaintiff would not stipulate until after Plaintiff motion for default judgment was filed the same date. (*Id.*) Ten days later—and prior to their filing deadline for opposing the motion for default judgment—Plaintiffs moved to set aside the entry of default. This strongly supports Defendants' position that they did not act in a culpable manner so as "to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *See Mesle*, 615 F.3d at 1092; *see also TCGIvega Info. Techs. PVT, Ltd. v. Karna Globa*, 2006 U.S. Dist. LEXIS 113410, *10 (N.D. Cal. May 12, 2006) (observing "the speed and diligence" with which the defendants sought to set aside the entry of default lended "credibility to the position of [the defendants] that they were unaware that they were at risk of default prior to the entry of default").

### B. Meritorious Defense

The primary concern in considering a request to set aside default is whether the defaulting party has a meritorious defense to the action. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). In seeking to vacate a default, a defendant "must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense…" *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700). A defense does not have to be proven by a preponderance of the evidence, but the moving party must establish "a factual or legal basis for the tendered defense." *Tri-Con't Leasing Corp., Inc. v. Zimmerman*, 485 F. Supp. 495, 497 (N.D. Cal. 1980).

Defendants assert they "have numerous meritorious defenses," including a lack of personal jurisdiction over Alfia Jivan and Liberty Novelty; "failure to state a cause of action predicated upon lack of nexus between Defendants AliRaza Jivan, Alfia Jivan and Liberty and the contract;" (Doc. 17 at 18) Further, Defendants contend DCM "has meritorious defenses against Plaintiff's claims on the grounds that DCM performed all of its obligations under the terms of the contract with Plaintiff, except those that were excused." (*Id.* at 19) Defendants contend Plaintiff's claims are barred "in their entirety" due to a force majeure clause" and DCM's right to reject the goods. (*Id.*) Finally, Defendants contend Plaintiff's claim fails because "Plaintiff breached the terms of the contract by not performing

7

pursuant to its terms and, specifically, failing to produce the product as required by the contract." (*Id.*, citing Alfia Jivan, Decl. ¶ 16 [Doc. 16-2 at 4; AliRaza Jivan Decl. ¶ 16 [Doc. 16-3 at 5])

According to Defendants, the Court lacks personal jurisdiction over Alfia Jivan because she "is a resident of Maryland and has never resided, worked or conducted business in the State of California." (Doc. 17 at 8, citing Alfia Decl. ¶ 3 [Doc. 16-3 at 2])  In addition, Defendants assert the Court lacks personal jurisdiction over Liberty Novelty, because it "is a Maryland corporation and has not conducted any business in the State of California."  (*Id.*, citing Alfia Decl. ¶ 4 [Doc. 16-3 at 2]; *see also* Doc. 16-2 at 2, ¶ 3)  Such facts, assumed as true, could support a determination that the Court lacks personal jurisdiction over these defendants.  Importantly, the Ninth Circuit indicated lack of personal jurisdiction qualifies as a meritorious defense. *See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1256 (1980); *see also Thunderbird Resorts, Inc. v. Zimmer*, 2018 WL 1542044, n.3 (S.D. Cal. Mar. 29, 2018) ("Defendant has presented a meritorious defense as to personal jurisdiction").

AliRaza Jivan asserts that Plaintiff "fail[ed] to produce the product as required by the contract." (Doc. 16-2 at 4, ¶ 16)  Under California law, a claim of breach of contract is comprised of "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage resulting from the breach." *Alcalde v. NAC Real Estate Invs. & Assignments Inc.*, 316 F. App'x 661, 662 (9th Cir. 2009), citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001). If Plaintiff failed to perform under the contract, the company is unable to establish a claim for breach of contract, and breach of the implied covenant of good faith a fair dealing.  The "allegations that Plaintiff failed to perform [its] obligations under the contract are sufficient to raise a meritorious defense to the breach of contract claim."  *See Dowling v. Bank of Am., N.A.*, 2016 WL 1046234 at*4 (E.D. Cal. Mar. 16, 2016).

Defendants have identified facts which, if true, constitute a defense.  Although Plaintiff argues Defendants lack credibility and fail to present evidence to support their claims (Doc. 21 at 12-14), the Court does not evaluate the veracity of these facts at this juncture.  The Ninth Circuit explained, "the question whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default." *Mesle*, 615 F.3d at 1094 (quoting *TCI Grp.*, 244 F.3d at 700)). "Rather,

that question 'would be the subject of the later litigation.'" *Id*.  Based upon the facts identified, Defendants have met the "minimal" burden to identify a meritorious defense.  *See id.*

### C. Prejudice

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701.  The relevant inquiry is "whether [the plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463.  Notably, a plaintiff "being forced to litigate on the merits" is not considered prejudice. *TCI Group*, 244 F.3d at 701.

Plaintiff contends it "will suffer prejudice from setting aside Defendants' defaults as Defendants have no meritorious defense to Plaintiffs Claims."  (Doc. 21 at 14)  However, as set forth above, Defendants met the burden to identify meritorious defenses.  Further, it does not appear Plaintiff's ability to pursue its claims were hindered by the delay, and there are no identified tangible harms, such as loss of evidence or increased difficulty with discovery.  *See TCI Group*, 244 F.3d at 701

### IV.    Conclusion and Order

Defendants have shown good cause exists for the entry of default to be set aside. Defendants did not act culpably when they failed to answer the complaint and have meritorious defenses. Further, Plaintiff will not be prejudiced if the default is set aside.  Therefore, the Court is acting within its discretion to set aside the entries of default. *See Mendoza*, 783 F.2d at 945-46.  Based on the foregoing, the Court **ORDERS**:

1. Defendants' motion to set aside the entry of default (Doc. 16) is **GRANTED**; and
2. Plaintiff's motions for default judgment (Doc. 15, 24) are terminated as **MOOT**.

IT IS SO ORDERED.

Dated:    **September 8, 2020**              **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

9